The 5th case this morning, Warwick v. Subway Restaurants. Warwick v. Subway Restaurants. Good morning, Your Honors. May it please the Court. The District Court erred when it applied federal rather than state law principles of equitable estoppel to determine whether Subway could enforce an arbitration agreement to which it was not a party. This case is on all fours with Scherer v. Fromm Family Foods in which this Court held that state law applied and that under Wisconsin equitable estoppel law, which is basically the same as Illinois equitable estoppel law, that Wisconsin law did not allow a non-signatory defendant to enforce an arbitration agreement between the plaintiff and a third party. Subway recognizes that it loses under Scherer, and so it's forced to argue that Scherer was wrong and should be overturned. But there's no compelling reason to overturn Scherer. It's consistent with every other circuit to consider this question, and more importantly, it's correct. Scherer was a straightforward application of the Supreme Court's opinion in Arthur Anderson v. Carlyle. So Illinois law applies here, and like the Wisconsin law in Scherer, equitable estoppel under Illinois law requires statements or conduct by Mr. Worsiak on which Subway reasonably relied to its detriment. But here there's nothing of that sort. Subway put forward no evidence that Mr. Worsiak did or said anything to Subway on which it reasonably relied to its detriment. In fact, Subway expressly disclaimed detrimental reliance. In its reply in support of its motion to compel arbitration below, it said, quote, Subway is not pursuing arbitration based on a theory of detrimental reliance. And without detrimental reliance, there can be no equitable estoppel under Illinois law. Now Subway doesn't argue that Illinois law allows it to enforce the arbitration agreement. Instead, it suggests that this court allowed the district court to decide whether it does on remand. We don't think that's appropriate for a couple reasons. First, waiver. Subway didn't argue that it can enforce the T-Mobile Arbiters' Clause under Illinois law either below or here. It had its chance below. It had its chance here. It didn't argue the merits under Illinois law at all. Second, application of Illinois law is clear. As I just explained, Subway cannot enforce this arbitration agreement under Illinois principles of equitable estoppel. There's no detrimental reliance here. And finally, there's no reason for the district court to decide the Illinois issue on remand because of our alternative argument. Even if Subway could enforce the arbitration agreement under Illinois principles of equitable estoppel, the dispute between Mr. Worsiak and Subway doesn't fall within the plain terms of the T-Mobile Arbitration Agreement. As we point out in our briefs, Subway refuses to explain exactly which T-Mobile terms and conditions apply. But regardless, all of them are similar and they're pretty clear. Disputes with third parties are subject to arbitration only if claims are also asserted against T-Mobile. Subway's reading of the agreements, which requires disputes against third parties to be arbitrated whether or not claims are asserted against T-Mobile, completely reads that language out of the agreements. That's our argument, and unless there's any questions, I'll reserve the remainder of my time for rebuttal. Thank you. Thank you, Your Honors. Ms. Brown? Good morning, Your Honors. My name is Christy Brown. I'm with the law firm of Alston & Byrd in Atlanta, and I'm here representing the APA League, which is Subway Restaurants, Inc. Scherer is not on all fours with the case before the court today. Neither Arthur Anderson nor Scherer addressed the precise issue that is before the court. They do not control the outcome, and there are two reasons why. First, in this case, the requirements of federal equitable estoppel are satisfied. The plaintiffs concede that. They don't appeal the district court's holding that the plaintiff's claims satisfy federal equitable estoppel. That was not the case in Arthur Anderson, and it was not the case in Scherer. In Arthur Anderson, there was no substantive discussion whatsoever of federal equitable estoppel. In fact, that decision doesn't even mention the federal equitable estoppel doctrine. In Scherer, the court expressly found that to the extent that a federal equitable estoppel doctrine remains, that its requirements were not satisfied in that case. That is in Scherer. So I would point the court to page 754 of the Scherer decision, and that's where the court addressed something called the Hughes-Masonry rationale. Hughes-Masonry is a Seventh Circuit case where the court recognized federal equitable estoppel. And in the Scherer case, the court said, to the extent that Hughes-Masonry reasoning survives Arthur Anderson, it does not apply here. The Scherer court did not reach the issue of federal equitable estoppel law. It did not reach the issue of whether it survived Arthur Anderson, but it acknowledged the possibility that it did, and it found that federal equitable estoppel wasn't satisfied. So that's one reason that Scherer is not on all fours with the case before the court today. The other reason is that in this case, the plaintiff, Mr. Worsiak, is purposefully acting to evade his admitted arbitration obligation. To T-Mobile, not to your client. The arbitration obligation is set forward in a contract with T-Mobile. That's correct. And T-Mobile is not a party to this litigation, right? T-Mobile is not a party to the litigation. However, plaintiff is asserting claims that are based solely on the conduct of T-Mobile. That's another reason Scherer is not on all fours. In the Scherer case, the plaintiff asserted Title VII claims based on sexual harassment and retaliation by her employer. Who did she sue? Her employer, the entity that she alleged engaged in the misconduct. That employer tried to take advantage of an arbitration agreement that was included in the employment agency's contract. But that was different there, right? Because the employer agency had nothing to do with the allegations of misconduct. It delivered, in effect, the plaintiff to her employer, and then it was not involved in the relationship. So let me talk about how that's different because it's really, really important. The plaintiff is a T-Mobile customer. T-Mobile, not Subway, sent the plaintiff a text. T-Mobile sent the text only because the plaintiff is a T-Mobile customer. The text was a part of a T-Mobile campaign called T-Mobile Tuesdays where T-Mobile provided gifts to their customers to say thank you for being a T-Mobile customer. So in this case, the text offered the plaintiff a free Subway sandwich. The plaintiff has now sued Subway, not T-Mobile, under the Telephone Consumer Protection Act. The event that gives rise to liability under the Telephone Consumer Protection Act is the sending of a text. And the only entity, even by plaintiff's complaint allegations, that sent a text here, that was T-Mobile. That was not Subway. So here we have a case where, as the district court recognized, the plaintiff is purposely acting to evade arbitration. And that is something that the FAA doesn't countenance and is the reason that the Federal Equitable Estoppel Doctrine exists. There is a Federal Equitable Estoppel Doctrine that exists in the Seventh Circuit. It was acknowledged in the Zurich case. It was acknowledged and applied in the Hughes-Masonry case. And it was, again, referenced by the court in minders in a fairly recent decision. There is a Federal Equitable Estoppel Doctrine. So the question becomes, are plaintiffs correct that either Arthur Anderson or Schur, in some way, abrogated that doctrine? Well, let's start with Schur. Schur did not abrogate the doctrine. Schur expressly found that even if, or to the extent that, Hughes-Masonry reasoning survives Arthur Anderson, it's not applicable here. When courts use that language, it is meant to cast significant doubt on the case in question when there's an intervening Supreme Court case. So that's not a hint that Hughes-Masonry survived. That's a hint that Hughes-Masonry didn't survive, but the court is trying to be complete in covering the basis just in case.  So it is to make clear that that decision was not made in the Schur case. OK, so let's discuss directly whether Hughes-Masonry survives Arthur Anderson. Great. I think it probably does not, because Arthur Anderson specifically said that state law governs. So I want to confront that issue, Your Honor, because Arthur Anderson has been cited by a number of cases for the proposition that state law governs equitable estoppel. We've got to look back at what the Supreme Court actually held and the issue it confronted in Arthur Anderson, because it was actually a fairly narrow issue. In Arthur Anderson, the Supreme Court confronted the question of appellate jurisdiction under the FAA. And in that case, the Sixth Circuit had held categorically that non-parties can never obtain a stay under Section 3 of the FAA. There was a question of jurisdiction that was presented to the Supreme Court as to whether, if a non-party's motion to compel arbitration were denied, it could obtain appellate review. And the Supreme Court had held, no, no, non-parties cannot invoke Section 3 of the FAA. So what Arthur Anderson held is that there are circumstances in which third parties can enforce arbitration agreements. Those include some circumstances and principles that exist under state law. And then the Court held that the Sixth Circuit's holding was an error because it categorically held that third parties can't enforce arbitration agreements when there were doctrines that would allow for it. The Supreme Court does have some language that says that the FAA doesn't disturb background principles of state law. And we know that because, for example, state law governs issues of contract formation so long as it is not applied in a way that is preempted by the FAA. But the Supreme Court acknowledged that federal law also plays a big role in determining arbitrability. And so what the Supreme Court said, and this is on page 1902 footnote 5 of the decision, the Supreme Court says whatever role the federal law applies, it cannot possibly, and this is quoting from the decision, it cannot possibly require the disregard of a state law permitting arbitration by or against non-parties to the written arbitration agreement. A state law that permits arbitration is, of course, enforceable and consistent with the Federal Arbitration Act. The holding of the Arthur Anderson case is limited to the appellate issue that we discussed already, but the takeaway, in addition, if there's another one, is that if there is a state court doctrine that allows for the enforcement of an arbitration provision by a third party, then that doctrine must be enforced. Doing so is consistent with the pro-arbitration policy that's underlying the FAA, and that policy has been reiterated by the Supreme Court again and again and again in a number of cases cited in our brief, including Concepcion, for example. Again, so your argument is we should overrule Judge Hamilton's case? No, Your Honor, that's not my argument, because the court in Shurer did not actually confront this issue. That case could remain in place, and you could still affirm the district court's decision. That's because there could be a role for state equitable estoppel doctrine and federal doctrine. As discussed, the facts in the Shurer case did not trigger the federal doctrine, and so the state law doctrine was applied. But if the federal doctrine is satisfied, it should be applied as well, and that is consistent with the purposes behind the Federal Arbitration Act. State law can leave a gap, or it can conflict with the FAA. If Nokia Irvin means what the plaintiffs argue it means today, then it is taking a narrow and restrictive view of third-party enforcement, and it is saying you cannot enforce, subway cannot enforce this arbitration agreement. That's what the plaintiff argues. We don't concede that. Federal arbitration law, federal equitable estoppel, would allow for enforcement, and so what they're asking the court is to interpret a federal law that doesn't... A state law is precluding enforcement of a federal law that would allow for arbitration. What's your source for the federal law allowing non-party enforcement of this contract? May I answer, Your Honor? I see my red light is on. I just don't want to get in trouble here. The answer is that the federal equitable estoppel doctrine that the trial court recognized, it provides for third-party enforcement in two instances. They are when the plaintiff alleges claims that presume or rely upon or reference the agreement containing the arbitration provision, or when there is joint and concerted misconduct here between subway and T-Mobile. The court found that those were satisfied, and the plaintiffs have not appealed those findings. The source of that doctrine is what case? The source of that doctrine... I would say Hughes Masonry is the source of the first prong, the prong that involves a contract that presumes or references an agreement, and that one is directly on point. That's a Seventh Circuit case. The other, the joint and concerted misconduct, originally arose out of a case called MS Dealer, but it has been applied by the lower courts, district courts in this circuit and elsewhere. The district court's decision should be affirmed. Thank you. Thank you, counsel. How much time? You have seven minutes, counsel. I don't think I'll need all seven minutes. Just a couple points. First, the source of this federal equitable estoppel doctrine is the MS Dealer test. That's the test that lower courts in the Northern District have applied. That's what Judge Koukouras applied here. But that's what circuit courts across the country have been saying is no longer good law in light of Arthur Anderson. That's what this court... In light of the evolving understanding of the FAA as not being a source of substantive law. Right. The state contract law governs the construction of arbitration contracts. Exactly, Your Honor. And whatever my friend says about what their position is, they are trying to litigate Schur. They are asking you to overturn Schur. They're citing Hughes. They're citing Zurich from this circuit. Those are both pre-Arthur Anderson cases. Their point about why can't we apply both federal and state law applies, that argument creates sort of this one-way ratchet. It's a heads-I-win, tails-you-lose. If federal law would enforce an ARP clause, we apply federal law. If it wouldn't, then we'll look to state law, and then state law would enforce it. But that's not how we do choice of law analysis. You don't figure out what your result is going to be and then pick the law that gets there. And finally, I don't think this ultimately matters, but if this court decides to apply federal equitable estoppel, which I think obviously it shouldn't, as we've discussed, we certainly don't concede that, and I'm happy to discuss why we don't concede that. Well, an equitable estoppel is a contract doctrine or a contract implied in law, I think, going back to torts, and there's no federal law of contract. Right, exactly. As you've pointed out, as this panel has pointed out, Section 2 of the FAA says we look to state contract law to determine when people have agreed to arbitrate, who's bound by arbitration agreements. We look to Illinois law here. Illinois law requires detrimental reliance, which they have expressly disclaimed. If there's any more questions, I'm happy to answer them, but otherwise I'll take my seat. I don't think so. Thank you, counsel. Thank you. Thanks to both counsel again. The case is taken under advisement.